IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDAN MASTERSON, | : | |
| | : | |
| Plaintiff | : | |
| | : | 07-CV-2241 |
| v. | : | |
| | : | JUDGE VANASKIE |
| FEDERAL EXPRESS CORPORATION, | : | |
| | : | |
| Defendant | : | |

MEMORANDUM

Plaintiffs Brendan Masterson, John Martin, and Joseph Defazio, Sr., former employees of Federal Express Corporation, on behalf of themselves and others similarly situated, bring this action for allegedly not receiving compensation for work performed pre- and post-shift. Plaintiffs assert statutory and common law claims against Defendants Federal Express Corporation ("FedEx Express"), David J. Bronczek, President and Chief Executive Officer of FedEx, Ronald J. Carlson, manger of the Information Systems Group, and Frederick W. Smith, Chairman, President and Chief Executive Officer of FedEx Corporation (the "Individual Defendants").[1]

Pending before the Court are FedEx Express' Motion to Dismiss (Dkt. Entry 16), the Individual Defendants' Motion to Dismiss (Dkt. Entry 18), and FedEx Express' Motion for Summary Judgment.  (Dkt. Entry 30.) For the reasons that follow, Defendants' Motions to

---

[1]Plaintiffs also name as Defendants John Does, 1-50, and ABC Companies, 1-10.

Dismiss will be denied.  A separate memorandum and order will be issued with regard to FedEx Express' Motion for Summary Judgment.

I.  BACKGROUND

Plaintiffs, former employees of Defendant FedEx Express, bring this action for allegedly not receiving compensation for work performed pre- and post-shift.  (Am. Compl., Dkt. Entry 13, at 5.)  The work they were allegedly required to perform before their shift includes:  obtaining the daily manifest; getting computers, printers and printer paper from an equipment room; obtaining customer supplies; stocking their vehicle; and performing a pre-trip inspection of their vehicle.  (Id. at ¶ 26.)  At the end of the shift, couriers were allegedly required to finalize paperwork, return their equipment, process and load packages, and assist in cleaning and locking up.  (Id. at ¶ 27.)

The FedEx Express Employee Handbook, under the section "Time Cards," states: "It is the policy of FedEx Express to compensate employees for all time worked in accordance with applicable state and federal law."[2]  (Ex. A, Dkt. Entry 13, at 22.)  The Amended Complaint states that FedEx Express couriers were required to punch a timecard into a punch clock before their scheduled start time and to punch out at the end of their shift.  (Am. Compl. at ¶¶ 42-43.)  They would then submit the card to FedEx Express.  (Id. at ¶ 43.)  As stated by

---

[2]The Employee Handbook also disclaims any intent to create contractual obligations: "The FedEx Express Employee Handbook is not a contract of employment, nor should its provisions be read or implied to provide for one."  (Ex. 1, Dkt. Entry 25-2, at 6.)

Ronald J. Carlson, the manual punch clock "has no pay function whatsoever, but acts as a back up protection for the employee, to confirm that they arrived on time for work."[3]  (Ex. B, Dkt. Entry 13, at 24.)

FedEx Express also employed a separate timekeeping system known as FAMIS.  (Id. at ¶ 46.)  Under FAMIS, each courier entered a code for each task performed.  (Id. at ¶ 48.)  There were dozens of codes representing the activities of the couriers.  (Id.)  According to the Amended Complaint, the FAMIS system is not coordinated with the manual punch card, but records time by the first and last task code entered by the courier into the FAMIS system on a given day.  (Id. at ¶ 49.)  The couriers could enter their task codes into a tracking device, called a super tracker, or write out their codes on a time card.  (Ex. C., Dkt. Entry 13, at 26.)

Couriers allegedly punched in on the manual system, but did not begin a scheduled task until later.  (Am. Compl. at ¶ 50.)  The time between punching in manually and the start of the first task code is alleged to be the time for which Plaintiffs were not compensated pre-shift.  (Id.)  There was allegedly no FAMIS task code for locating and gathering equipment and supplies at the beginning of the shift.  (Id. at ¶ 51.)  Likewise, it is alleged that couriers punched out well-after their last scheduled task code in order to return the equipment and close out the day.  (Id. at ¶ 52.)

_____

[3] "The manual punch clock creates a record of when an employee is on the premises, and therefore can be used to investigate if an employee is arriving later or leaving early and falsifying his or her FAMIS time entries." (Ex. B, Dkt. Entry 13, at 24 n.1.)

The First and Second Claims for relief allege violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., against Defendants Messrs. Bronczek, Carlson, and Smith.  (Am. Comp. at 13.)  These claims will not be considered because Plaintiffs have voluntarily agreed to their dismissal.[4]  (Stipulation of Dismissal, Dkt. Entry 52.)

The Third Claim for relief alleges that FedEx Express breached an express and implied contract with Plaintiffs by failing to pay wages for all hours worked.  (Am. Compl. ¶ 90.)  The Amended Complaint alleges that FedEx Express agreed to pay Plaintiffs for all hours worked. The Employee Handbook states that "[i]t is the policy of FedEx Express to compensate employees for all time worked . . . ."  (Id. at ¶¶ 83-84.)  Plaintiffs further allege that an implied contract arose out of the parties' conduct.  (Id. at ¶ 86.)

The Fourth Claim for relief alleges violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1, et. seq., against FedEx Express and Mr. Bronczek for failing to pay Plaintiffs for all hours worked.  (Am. Compl. at 17.)  The Fifth Claim for relief alleges violations of the Pennsylvania Minimum Wage Act ("MWA"), 43 Pa. Cons. Stat. § 333.102 et seq., against FedEx Express for failing to pay Plaintiffs for all hours worked.  (Id.

---

[4]The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 since the federal claims have been voluntarily dismissed.  Neither party disputes that Pennsylvania law applies.  See Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992) ( "Federal courts sitting in diversity must apply the substantive law of the state whose laws govern the action." (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938))).

at 18.)  The Sixth Claim for relief asserts a claim of unjust enrichment against FedEx Express. Plaintiffs claim they conferred a benefit upon FedEx Express and it would be unjust not to receive the value of the benefit.  (Id. at ¶¶ 103-105.)  Finally, the Seventh Claim for relief alleges a claim for quantum meruit relief against FedEx Express.  (Id. at 19.)  It is averred that Plaintiffs are entitled to quantum meruit damages for the reasonable value of their services. (Id. at ¶ 110.)

II.  DISCUSSION

A.  Standard of Review

The Court's task on a motion to dismiss is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief . . . ."  Langford v. Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true.  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

Dismissal of a complaint is appropriate only if, accepting as true all facts alleged, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1965 (2007) (abrogating the "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46, 78 (1957)).  As a result of Twombly, Plaintiffs must now nudge their claims "across the line from conceivable to plausible." Id.  To state a claim consistent with the language of Fed. R. Civ. P. 8(a)(2), which requires only

a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations enough "to raise a right to relief above a speculative level." Id. Each of the claims asserted in the Complaint will be assessed in the context of this standard of review

B. FedEx Express' Motion to Dismiss

FedEx Express asserts several grounds for dismissal of Plaintiffs' claims.  FedEx Express claims that Plaintiffs' quantum meruit and unjust enrichment claims are preempted by the Fair Labor Standards Act (FedEx's Mem. Supp. Mot. Dismiss, Dkt. Entry 25, at 13), that Plaintiffs have failed to state a claim for breach of express or implied contract (id. at 14), that Plaintiffs' WPCL claim should be dismissed as it does not create an independent right to compensation (id. at 22), and that Plaintiffs cannot state a claim for unjust enrichment or quantum meruit.  (Id. at 23.)  These challenges to Plaintiffs' claims will be addressed seriatim.[5]

1.  Express and Implied Contract Claims

"A contract may be manifest orally, in writing, or as an inference from the acts and

---

[5] FedEx Express asserts that the quantum meruit and unjust enrichment claims are nothing more than duplicative standard wage and hour claims, and are thus preempted by the FLSA.  (FedEx's Mem. Supp. Mot. Dismiss, Dkt. Entry 25, at 13-14.)  In their Brief in Opposition, Plaintiffs argue that the unjust enrichment and quantum meruit claims are not preempted by the FLSA because Plaintiffs are not seeking overtime wages, but straight-time, or gap-time wages.  (Pls.' Br. Opp'n FedEx Express' Mot. Dismiss, Dkt. Entry 33, at 4.)  FedEx Express does not renew its argument of preemption in its Reply Brief.  (See Defs.' Reply Br., Dkt. Entry 41.)   Plaintiffs explicitly disclaim reliance upon the FLSA.  Thus, under the circumstances, further consideration of the preemption argument is not warranted.

conduct of the parties." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) (internal citations omitted). "An express contract is formed when the terms of an agreement are declared by the parties either verbally or in writing." McGough v. Broadwing Communications, Inc., 177 F. Supp. 2d 289, 296 (D.N.J. 2001). "[A] contract implied in fact, which is an actual contract, . . . arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." Cameron v. Eynon, 3 A.2d 423, 424 (Pa. 1939); see also Hertzog v. Hertzog, 29 Pa. 465, 1857 WL 7510, at *4 (Pa. 1857) ("Implied contracts, which arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract."). "A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation." Ingrassia Const. Co., Inc. v. Walsh, 486 A.2d 478, 483 n.7 (Pa. Super. Ct. 1984).

Under Pennsylvania law, in order to assert a breach of contract claim, a plaintiff is generally required to plead three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). It is not necessary, however, to "'explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary

7

to sustain recovery.'" Hopkins v. GNC Franchising, Inc., No. 06-3229, 2008 WL 3845375, at *3

(3d Cir. Aug. 19, 2008) (citing Menkowitz v. Pottstown Memorial Med. Ctr., 154 F.3d 113, 124

(3d Cir.1998)).

      Here, the Amended Complaint alleges that Plaintiffs had an understanding that they

were being paid for all hours worked by their employer.  For Plaintiffs, all hours worked meant

the hours between manually punching in and punching out.[6]  (Am. Compl., ¶¶ 55, 83-88.)  The

essential element of the contract is the promise, whether explicit or implicit, to pay for all hours

worked.  Plaintiffs likewise allege that FedEx Express breached the contract in not paying them

for their pre- and post-shift work, which resulted in damages.  The contract claim presented by

the pleadings is not implausible.  Accordingly, the Court finds that FedEx Express is sufficiently

put on notice by the Amended Complaint of Plaintiffs' breach of contract claim.  See Bauer v.

Beneficial Consumer Discount Co., Civil Action No. 07-00247, 2007 WL 4269804, at *5 (W.D.

Pa. Dec. 3, 2007) (finding the defendants sufficiently on notice of a Pennsylvania common law

breach of contract claim when the pleading identified the parties to the alleged contract, the

duties of the contract, and the defendants' failure to perform their duties under the contract,

---

[6]FedEx Express contends that the essential allegation that Plaintiffs expected to be paid for the time between their manual punch times is lacking (Def.'s Reply Br., Dkt. Entry 41, at 15-16.)  I disagree.  Plaintiffs specifically allege that "Defendant, FedEx Express, expressly agreed to pay Plaintiffs for all hours worked."  (Am. Compl. at ¶ 84.)  Plaintiffs also list the work they were required to do before and after their shift that was not recorded on the FAMIS system.  (Id. at ¶¶ 26-27.)  Drawing all inferences in favor of Plaintiffs, as required, it is evident that Plaintiffs expected to be paid for their pre- and post-shift work.

which resulted in damages).

FedEx Express argues that the Employee Handbook cannot be a basis for contract liability.  (See FedEx's Mem. Supp. Mot. Dismiss, Dkt. Entry 25, at 15.)   An Employee Handbook itself generally does not create contract rights.  Pennsylvania courts have consistently held that, the provisions of employee handbooks do not create contract rights, absent an indication by the employer to the contrary, in the context of wrongful discharge claims.  See Frame v. Berkey Photo, Inc., Civ. A. No. 85-5832, 1987 WL 6885, at *1 (E.D. Pa. 1987); Anderson v. Haverford College,  851 F. Supp. 179, 181 (E.D. Pa. 1994) ("In order for an employee handbook to constitute a contract, it must contain a clear indication that the employer intends to overcome the at-will presumption.").

Here, Plaintiffs are not alleging wrongful discharge, but that they were not paid wages for hours worked.  The Employee Handbook is not the sole basis for the alleged contract, but a factor contributing to the Plaintiffs' understanding of their employment agreement.  In other words, the provision in the Employee Handbook stating FedEx Express' policy to compensate employees for all time worked provides a basis for Plaintiffs' expectation of the terms of employment.  As such, the handbook is relevant, but not a *sine qua non* of the existence of the contractual obligation posited by Plaintiffs.[7]

---

[7]FedEx Express argues that courts have dismissed breach of contract cases against it because of the disclaimer language contained in its Employee Handbook and People Manual. (FedEx's Mem. Supp. Mot. Dismiss, Dkt. Entry 25, at 18.)  None of the cases cited by FedEx

9

In this regard, the law recognizes an employee's right to be paid for hours worked.  See Martin v. Little, Brown and Co., 450 A.2d 984, 987 (Pa. Super. Ct. 1981) ("A promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service."); see also McGough v. Broadwing Communications, Inc., 177 F. Supp. 2d 289, 296 (D.N.J. 2001) (recognizing an employer's "contractual obligation to provide the compensation promised in return for an employees services.").  Plaintiffs have sufficiently alleged that they believed they would be paid for all hours worked, but that FedEx Express has failed to do so.  There is at least an inference, which must be drawn in Plaintiffs' favor, that FedEx Express breached its contract with its employees  See Hopkins, 2008 WL 3845375, at *3 (reversing the district court's dismissal of the complaint because the plaintiffs' allegations of a breach of contract claim created an inference that defendant violated a contract provision).

FedEx Express asserts that Plaintiffs knew they were being paid on the FAMIS system. (FedEx.'s Reply Br., Dkt. Entry 41, at 14.)  Whether there was another agreement that only the

---

Express, however, concerns a claim for payment for hours worked.  In fact, in most of the cases listed, the plaintiffs are attempting to overcome their at-will status in alleging a contract based on the Employee Handbook to support a wrongful discharge claim.  See Aquinas v. Federal Exp. Corp., 940 F. Supp. 73, 80 (S.D.N.Y. 1996); Leahy v. Federal Exp. Corp., 609 F. Supp. 668 (E.D.N.Y. 1985); Cowen v. Federal Exp. Corp., 25 F. Supp. 2d 33 (D. Conn. 1998); White v. Federal Exp. Corp., 729 F. Supp. 1536 (E.D. Va. 1990); Federal Exp. Corp. v. Dutschmann, 846 S.W. 2d 282 (Tex.1993).

FAMIS hours counted toward the wage paid cannot be resolved at the pleading stage. Accordingly, the motion to dismiss the contract claims will be denied.

### 2. Pennsylvania Wage Payment and Collection Law Claim

The WPCL "itself does not create a right to compensation. Rather, it gives 'additional protections to employees by providing statutory remedies for the employer's breach of its contractual obligation to pay wages.'"  Sendi v. NCR Comten, Inc., 619 F. Supp. 1577, 1579 (D.C.Pa.,1985); see also Stump v. Richland Tp., 278 F. App'x 205, 207 (3d Cir. 2008).  FedEx Express argues that Plaintiffs' WPCL claim "should be dismissed because Plaintiffs have failed to state a claim for breach of express or implied contract."  (FedEx's Mem. Supp. Mot. Dismiss, Dkt. Entry 25, at 22.)  Because Plaintiffs have in fact sufficiently plead a breach of contract claim, as noted previously, FedEx Express' argument has no merit.

### 3. Unjust Enrichment and Quantum Meruit Claims

FedEx Express contends that, since Plaintiffs' have an adequate remedy at law for wage and hour claims, they are not entitled to a remedy in equity.  (FedEx's Mem. Supp. Mot. Dismiss, Dkt. Entry 25, at 23.)  It is true that a party may not seek relief under the quantum meruit doctrine while also admitting that a valid contract established the value of the services rendered by that party.  See Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987); Constar, Inc. v. National Distribution Centers, Inc., 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000).  This principle prohibits a party from circumventing the contract by seeking a

different value for the services using a quantum meruit theory of recovery.  Otherwise, a party could attract business by offering to provide a service for a low fee, then claim a higher fee later using the doctrine of quantum meruit.

A different situation exists, though, when a party acts pursuant to a contract that is later found to be invalid or unenforceable.  In this situation, the other party to the contract may be unjustly enriched if it is allowed to accept benefits conferred under the contract.  Consequently, a quantum meruit theory of recovery is actionable in this situation.  See MLEA, Inc. v. Atlantic Recycled Rubber Inc., No. Civ.A. 02-4393, 2005 WL 1217190, at *4 (E.D. Pa. May 19, 2005) (allowing an unjust enrichment claim to proceed in the alternative to a breach of contract claim if the factfinder determined the contract was unenforceable); Shulman v. Continental Bank, 513 F. Supp. 979, 986 (E.D. Pa. 1981) (same); Gonzalez v. Old Kent Mortg. Co., No. Civ.A.99-5959, 2000 WL 1469313, at *6 (E.D. Pa. 2000) (finding the defendant's motion to dismiss the plaintiff's unjust enrichment claim premature because "plaintiffs are free to pursue alternative theories of recovery, including breach of contract and unjust enrichment.")  In this regard, Federal Rule of Civil Procedure 8(e)(2) permits a party to set forth two or more statements of a claim alternatively or hypothetically, either in one count or in separate counts.  See FED. R. CIV. P. 8(e)(2).  Accordingly, Plaintiffs may plead both claims at this stage in the litigation.[8]  See

---

[8]Whether an adequate remedy at law exists cannot be determined at this stage in this litigation.

Liberty Mut. Ins. Co. v. Muskin Leisure Products, Inc., No. 3:CV-05-0253, 2006 WL 2642387, at
*2 (M.D. Pa. Sept. 13, 2006).

      C.  The Individual Defendants' Motion to Dismiss

      Because Plaintiffs' have voluntarily dismissed the RICO claims, the only question to be
addressed on the Individual Defendants' Motion to Dismiss is whether Plaintiffs have sufficiently
alleged a claim under the WPCL.  The arguments in the Individual Defendants' Motion to
Dismiss mirror those made in FedEx Express' Motion to Dismiss.  (Individual Defs.' Mem.
Supp. Mot. Dismiss, Dkt. Entry 19, at 27.)  Accordingly, the Individual Defendants' Motion to
Dismiss Plaintiffs' WPCL claim will be denied.

III.    CONCLUSION

      For the reasons set forth above, the motions to dismiss will be denied.  An appropriate
Order follows.

                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie
                              United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENDAN MASTERSON,                         :
                                           :
             Plaintiff                     :
                                           :        07-CV-2241
       v.                                  :
                                           :        JUDGE VANASKIE
FEDERAL EXPRESS CORPORATION,               :
                                           :
             Defendant                     :

ORDER

NOW, THIS 26th DAY OF SEPTEMBER, 2008, for the reasons set forth in the forgoing

memorandum of law, IT IS HEREBY ORDERED THAT:

1.  Defendant FedEx Express' Motion to Dismiss (Dkt. Entry 16) is DENIED.

2.  The Individual Defendants' Motion to Dismiss (Dkt. Entry 18) is DENIED.

3.  A telephonic scheduling conference shall be held on October 15, 2008, at 9:15 a.m.

Counsel for Plaintiffs shall be responsible for placing the call to Chambers.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge