IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENDAN MASTERSON, et al.,          :
                                    :
          Plaintiffs                :
                                    :          07-CV-2241
     v.                             :
                                    :          JUDGE VANASKIE
FEDERAL EXPRESS CORPORATION,   :
                                    :
          Defendant                 :

MEMORANDUM

Plaintiffs Brendan Masterson, John Martin, and Joseph Defazio, Sr., former employees of Federal Express Corporation (FedEx), on behalf of themselves and others similarly situated, bring this action for allegedly not receiving compensation for work performed before and after their shifts.  Plaintiffs assert statutory and common law claims.  Presently before the Court is Defendant FedEx's Motion for Summary Judgment on Plaintiffs' Pennsylvania Minimum Wage Act Claim ("PMWA"), 43 Pa. Cons. Stat. § 333.101, et seq.[1]  The sole issue presented for decision at this stage is whether a workweek standard, by which a violation occurs where compensation is less than the product of the total number of hours worked and the statutory minimum hourly rate (as argued by FedEx), or a per-hour standard, by which a violation occurs

---

[1]Defendant's Motion to Dismiss was addressed in an opinion previously issued by the Court.  See Masterson v. Federal Exp. Corp., No. 07-CV-2241, 2008 WL 4415700 (M.D. Pa. Sept. 26, 2008).

if there is any time that is not compensated (as claimed by Plaintiffs), governs alleged violations of the PMWA. For the reasons stated below, the Court finds that the Pennsylvania General Assembly intended a workweek standard to apply to the PMWA. Summary judgment in favor of FedEx is therefore warranted.

I. BACKGROUND

Plaintiffs Brendan Masterson, John Martin, and Joseph Defazio, Sr. are former couriers of FedEx. (Def.'s Statement of Material Facts ("SMF"), Dkt. Entry 31, at ¶ 1.) A courier's responsibilities included operating company vehicles, delivering and picking-up packages, meeting aircraft, and loading and unloading aircraft. (Id. at ¶ 2; see Nonexempt Job Description, Dkt. Entry 31-5, at 97-98.) According to Plaintiffs, their pre-shift work included: obtaining the daily manifest; getting computers, printers and printer paper from an equipment room; obtaining customer supplies; stocking their vehicles; and performing a pre-trip inspection of their vehicles. (See Masterson, Martin & Defazio Declarations, Dkt. Entries 37-2 -4, at ¶ 3.) At the end of the shift, couriers were allegedly required to finalize paperwork, return their equipment, process and load packages, and assist in cleaning and locking up. (Id. at ¶ 4.)

Couriers at FedEx conducted their work between the hours of 7:40 a.m. and 7:30 p.m., depending on whether they had a delivery or pick-up cycle. (Def's. SMF, at ¶ 20.) The morning part-time couriers generally started at 7:30 a.m., and finished by 11:00 a.m. (Id.) The afternoon part-time couriers generally started at 2:30 p.m., and ended around 7:30 p.m. (Id.)

Full-time couriers generally started around 7:40 a.m., and ended around 5:30 p.m.  (Id.)

Mr. Masterson was employed by FedEx from September 1, 1992, to May 15, 2007. (Def.'s SMF, at ¶ 3.)  His pay rate between December 10, 2004, and March 5, 2005, was $19.36 per hour, which is $774.40 per week for forty hours.  (Id. at ¶ 9.)  From March 6, 2005 to March 4, 2006, he received $19.94 per hour, or $797.60 per forty-hour workweek.  (Id. at ¶ 10.) From March 6, 2006, to December 31, 2006, he was compensated at $20.54 per hour, or $821.60 per forty-hour workweek.  (Id. at ¶ 11.)

Mr. Martin was employed by FedEx from April 1, 1985, to January 4, 2007.  (Def.'s SMF, at ¶ 4.)  His pay rate between December 10, 2004, and March 5, 2005, was $19.36 per hour, or $774.40 per forty-hour workweek.  (Id. at ¶ 16.)  Between March 6, 2005, and March 4, 2006, he earned $19.94 per hour, or $797.60 per forty-hour workweek.  (Id. at ¶ 17.)  Between March 6, 2006, and January 4, 2007, he received $20.54 per hour, or $821.60 per forty-hour workweek.  (Id. at ¶ 18.)

Mr. DeFazio was employed by FedEx from October 2, 1982, to December 1, 2005. (Def.'s SMF, at ¶ 5.)  His pay rate from December 10, 2004, to March 5, 2005, was $19.36 per hour, or $774.40 per forty-hour workweek.  (Id. at ¶ 13.)  Between March 5, 2005, and his retirement on December 1, 2005, he earned $19.94 per hour, or $797.60 per forty-hour workweek.  (Id. at ¶ 14.)[2]

---

[2]None of the Plaintiffs worked in the year 2007.  (Def.'s SMF, at ¶ 8.)

Plaintiffs claim that they have not been paid for all hours worked when preforming pre-shift and post-shift work.  (See Masterson, Martin & Defazio Declarations, Dkt. Entries 37-2 -4, at ¶ 5.)  They further contend that the failure of FedEx to pay them for all work required of them violated the PMWA.  Essentially, Plaintiffs claim that the PMWA required that they be paid the prevailing minimum wage for all time worked.  Because pre- and post-shift time was not compensated, Plaintiffs claim that FedEx violated the PMWA.  FedEx, on the other hand, argues that their can be no violation of the PMWA because Plaintiffs' compensation exceeded the minimum amount required to be paid based on a standard workweek, even after including the alleged uncompensated pre- and post-shift time.  In other words, FedEx asserts that, because Plaintiffs' compensation exceeded the product of the total number of hours worked and the statutory minimum hourly rate, there can be no violation of the PMWA.

II.  DISCUSSION

A.  The Pennsylvania Minimum Wage Act and the Fair Labor Standards Act

The pivotal question in this case is whether the workweek standard or the per-hour standard was contemplated by the Pennsylvania General Assembly in promulgating the PMWA.[3]  FedEx advocates the workweek standard – "dividing the employee's total earnings for

---

[3]A federal court sitting in diversity must apply the substantive law as decided by the state's highest court.  Travelers Indem. Co. of Illinois v. DiBartolo, 131 F. 3d 343, 348 (3d Cir. 1997).  When the Pennsylvania Supreme Court has not directly addressed the issue before the federal court, as is the case here, the court must forecast how the Pennsylvania Supreme Court would resolve the issue.  Id.  Applicable decisions of the Superior Court are to be accorded significant weight, and carefully considered dicta from the Pennsylvania Supreme

the workweek by the compensable hours." (Def.'s Mot. Summ. J., Dkt. Entry 32, at 7-8.) This

coincides with the week-by-week standard of the Fair Labor Standards Act ("FLSA").  Plaintiffs,

on the other hand, argue the per-hour standard should be applied – "an employee must be paid

at least the minimum wage rate for each hour worked." (Pls.' Mem. Opp'n Mot. Summ. J., Dkt.

Entry 37, at 1-2.)  If the workweek standard is applicable under the PMWA, then FedEx has not

violated the PMWA and entry of summary judgment in its favor would be appropriate.[4]  If the

per-hour standard is applicable, however, then summary judgment in favor of FedEx would not

be warranted.

The Pennsylvania General Assembly promulgated the PMWA with an objective to guard

against wages that are "unreasonably low and not fairly commensurate with the value of the

services rendered." 43 Pa. Cons. Stat. § 333.101.  The General Assembly acted in order to

protect occupations where "wages . . . are often found to bear no relation to the fair value of the

services rendered." 43 Pa. Cons. Stat. § 333.101.  In pertinent part, the PMWA provides:

> Every employer shall pay to each of his or her employees wages for all hours
> worked at a rate not less than:
>
> . . . .

---

Court may also inform this Court's prediction. Id. (citing Rolick v. Collins Pine Co., 925 F.2d
661, 664 (3d Cir.1991), and McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662 n.21 (3d Cir.
1980)).

[4]Plaintiffs do not deny that Plaintiffs' compensation for every workweek is above the
minimum wage prescribed by the PMWA if the workweek standard advocated by FedEx is
utilized. (See Pl.'s Mem. Opp'n Mot. Summ. J., Dkt. Entry 37.)

(4) Three dollars thirty-five cents ($3.35) an hour after December 31, 1980.
(5) Three dollars seventy cents ($3.70) an hour beginning February 1, 1989.
(6) Five dollars fifteen cents ($5.15) an hour beginning September 1, 1997.
(7) Six dollars twenty-five cents ($6.25) an hour beginning January 1, 2007.
(8) Seven dollars fifteen cents ($7.15) an hour beginning July 1, 2007.

43 P.S. § 333.104 (emphasis added).[5]

The avowed purpose of the PMWA is similar to that expressed by Congress in enacting the Fair Labor Standards Act of 1938: "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (U.S. 1981) (citing 29 U.S.C. § 202(a)).   The FLSA prescribes the wage rates that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . ." 29 U.S.C. § 206(a).

The FLSA and the PMWA, both of which pursue the common objective of protecting hourly employees from substandard and unfair wages, define minimum wage in terms of an hourly rate. The Code of Federal Regulation governing the FLSA explains that "an employee

_____

[5]The limitations period for a Minimum Wage Act claim is three years.  43 Pa. Cons. Stat. § 260.9(a)(g).  Thus, Plaintiffs may only recover damages for up to three years preceding the commencement of this action.

must be compensated for all hours worked."[6] 29 C.F.R. § 778.223.  The operative language of the PMWA likewise calls for "all hours worked."   "Neither law expressly provides for any unit of time over which the amount of compensation received can be averaged against the number of hours worked, in order to determine whether or not the average compensation per hour equals the minimum wage provided."  Dove v. Coupe,  759 F.2d 167, 171 (D.C. Cir. 1985).

Despite statutory language calling for compensation for all hours worked at a rate at least equal to a prescribed minimum wage, courts have generally agreed that a workweek standard represents a reasonable reading of the statute.  Dove v. Coupe,  759 F.2d 167, 172 (D.C. Cir. 1985); United States v. Klinghoffer Bros. Realty Corp.,  285 F.2d 487, 493 (2d Cir. 1960) (concluding that the FLSA was not violated "because each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate."); Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1198 (4th Cir. 1969) (same).  FedEx claims that the PMWA must be construed in a manner consistent with the federal courts' construction of the FLSA.

Pennsylvania courts have indicated that it is proper to give deference to the federal courts' interpretation of a federal statute when the state statute at issue substantially parallels the federal law.  See, e.g., Commonwealth v. Pennsylvania Labor Relations Board, 527 A.2d

---

[6]"As a general rule the term 'hours worked' will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so." 29 C.F.R. § 778.223.

1097 (1987) (referring to the National Labor Relations Act when interpreting the Public

Employee Relations Act.)  Statutes are read in pari materia when they relate to the same

persons or things or to the same class of persons or things and must be construed together if

possible.  See 1 Pa. Con. Stat. § 1932.  This rule of statutory construction favors application of

a workweek standard.

This conclusion is buttressed by an examination of various sections of the PMWA. For

example, the General Assembly expressly promulgated a workweek standard for assessing

criminal penalties under the PMWA:  "Each week in which such employe is paid less than the

rate applicable to him or her under this act and for each employe who is paid less than the

prescribed rate, a separate offense shall be deemed to occur."  43 Pa. Cons. Stat. § 333.112(b)

(emphasis added).  It is thus evident that criminal penalties apply only where compensation in a

particular workweek is less than the product of hours worked and the applicable minimum

wage.  Without any express pronouncement by the General Assembly, it cannot be said that it

intended separate standards for criminal and civil liability under the PMWA.[7]

FedEx further points to three provisions under 43 Pa. Cons. Stat. § 333.104 where the

---

[7]In Walker v. Washbasket Washy & Dry, No. CIV. A. 99-4878, 2001 WL 770804 (E.D. Pa. July 5, 2001), the court calculated the plaintiff's wages due using a workweek standard, and found that the employer paid above the minimum wage for a forty-hour workweek. Id. at *17. The court further used the workweek standard in calculating the amount of overtime wages due, and found the employer did not pay sufficient overtime wages. Id. Although the court did not squarely address the issued presented in this action, the court's method of calculation supports a finding that the workweek standard is appropriate.

PMWA relies on the FLSA to fill in certain gaps.  (Def.'s Mot. Summ. J., Dkt. Entry 32, at 9.) Subsection (a.1) does not allow the PMWA to require a lower minimum wage than federal law. Subsection (d) allows employers to obtain a Federal certificate as outlined by the FLSA in order to compensate the physically and mentally impaired less than minimum wage.  And Section (e) calls for training wages for those under the age of twenty years to be at a rate not less than those set by the FLSA.  It is evident from these provisions that the General Assembly considered the FLSA in promulgating the PMWA.  Under these circumstances, reading the statutes in pari materia is warranted.

Plaintiffs contend that the per-hour standard is applicable to the PMWA, relying on Armenta v. Osmose, Inc., 37 Cal. Rptr. 3d 460, 467 (Cal. Ct. App. 2005).  In Armenta, the court concluded that California's minimum wage law does not use the workweek standard due to the language of the California minimum wage law, which provides:  "Every employer shall pay to each employee wages not less than . . . [$6.75] per hour for all hours worked."  Id.  In arriving at this conclusion, the court looked to sections 221, 222, and 223 of California's Labor Code.

> [S]ection 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." (Italics added.)  Section 222 provides: "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon." (Italics added.) Finally, section 223 provides: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

Id. at 467-68.  Adopting a workweek standard would contravene these code sections.  Id.

The PMWA, in contrast, does not contain provisions similar to California's Labor Code.

Pennsylvania's regulations, in fact, apply a workweek standard in most situations.  See 34 Pa.

Code § 231.34© (tipped employees); 34 Pa. Code § 231.61(d) (students); 34 Pa. Code §

231.74(e) (handicapped workers).  Overtime pay is also calculated on a workweek standard.

See 34 Pa. Code § 231.42  ("Overtime shall be compensated on a workweek basis regardless

of whether the employee is compensated on an hourly wage, monthly salary, piece rate or

other basis.").  There is simply no explicit statement from the General Assembly that a standard

other than the workweek is to be applied to hourly employees under the PMWA.[8]

The Court of Appeals for the Ninth Circuit addressed an issue indistinguishable from that

presented here save for the fact that the case before it arose under the State of Washington's

Minimum Wage Act ("WMWA").  In Alvarez v. IBP, Inc., 339 F.3d 894, 897-98 (9th Cir. 2003),

---

[8]As noted by Plaintiffs, the PMWA goes beyond the FLSA in providing additional
protections to employees.  (Tr. Oral Argument, Dkt. Entry 53, at 35.)  For example, the FLSA
allows a new hire under twenty years of age to be paid less than minimum wage for the first
ninety days of employment.  See 29 U.S.C. § 206(g)(1).  The PMWA, in contrast, limits the
period of time to the first sixty days.  See 43 Pa. Cons. Stat. § 333.104(e).  Likewise, an
employer may pay student-learners seventy-five percent of the minimum wage under the FLSA
(see 29 C.F.R. § 520.506(a)), whereas the PMWA increases that amount to eighty-five percent.
See  43 Pa. Cons. Stat. § 333.104(b).  Compare, Armenta, 37 Cal. Rptr. 3d at 467 (recognizing
that California's minimum wage law protects the minimum wage rights of California employees
to a greater extent than the FLSA).  Even so, it cannot be inferred that the General Assembly
intended to diverge from the FLSA by applying a per-hour standard to determine whether an
employer has violated the PMWA.

aff'd on other grounds, 546 U.S. 21 (2005), plaintiff-employees complained that they were not compensated for the time it took to change into required specialized protective clothing and safety gear by Defendant IBP, the owner of a meat processing plant. The employees argued that the WMWA required employers to compensate hourly-employees the minimum wage per-hour, and not per workweek. Id. at 912. The district court found the per-hour standard applicable under the WMWA for the following reasons:

> First, the WMWA omits the phrase "in any workweek," which is contained in the relevant portion of the FLSA. Second, the district court drew significance from the fact that . . . [a state] trial court used a per-hour measure and the Washington Supreme Court refused to criticize this aspect of the trial court's methodology. Third, it deferred to the WDLI [Washington Labor and Industries] interpretation that, for hourly workers, the WDLI employs the per-hour standard for determining minimum wage compliance.

The Ninth Circuit affirmed the district court's finding that the Washington Supreme Court was likely to adopt the per-hour standard for hourly employees, focusing on the statutory and regulatory background. Id. at 912-13. The court found that the regulations interpreting the WMWA repeatedly listed hourly employment as a separate employment type, and permitted use of the workweek measure only for particular employment categories. Id.

The PMWA is readily distinguishable from the WMWA . As noted previously, the PMWA and FLSA employ the same operative language – "all hours worked." The WMWA does not. See RRCW § 49.46.020. Unlike the Washington scenario, there is no opinion from the Pennsylvania Department Labor and Industry that the PMWA should be enforced under a per-

hour standard.  And finally, there is no opinion, or affirmation of a lower court's opinion, from the Pennsylvania Supreme Court for this Court to draw upon in determining the applicable standard.

The PMWA is more analogous to Oregon's Minimum Wage Law.  In Wilken v. Cascadia Behavioral Health Care, Inc., No. CV 06-195-ST,  2007 WL 2916482, at *11 (D. Or. Oct. 5, 2007), the district court held that Oregon's Minimum Wage Law mirrored the FLSA in requiring the workweek standard.  Despite the plain language in Oregon's Minimum Wage Law – "for each hour of work time that the employee is gainfully employed" (ORS 653.025) – the court found that adopting a per-hour standard would conflict with the FLSA and that Oregon's Administrative Code was guided by the FLSA.  Id. at *9.  Oregon's Administrative Code provides that "Oregon's Bureau of Labor and Industries ("BOLI") is 'guided' by the Code of Federal Regulations [29 CFR § 778.223] enforcing the FLSA."   Id.  The court concluded that "[s]ince the FLSA has adopted a 'workweek' method, interpreting ORS 653.025 as adopting an 'hourly' method solely on the basis of its plain language would lead to interpreting 29 CFR § 778.223 as contrary to the FLSA."  Id.

This rationale applies with equal force here.  Although the plain language of the PMWA provides for "all hours worked," interpreting the PMWA as employing a per-hour standard while a workweek standard applies notwithstanding similar language in the FLSA would create disparate interpretations based on the same language.

12

In sum, this Court predicts that the Pennsylvania Supreme Court would interpret the PMWA as requiring employers to pay the applicable minimum wage for each workweek, thus adopting the workweek standard.  Such an interpretation furthers the objectives of the PMWA in the same way that the workweek standard gives effect to the FLSA.

III.  CONCLUSION

For the reasons stated in the foregoing memorandum, the Motion for Summary Judgment will be granted.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRENDAN MASTERSON,               :
                                 :
            Plaintiff            :
                                 :    07-CV-2241
      v.                         :
                                 :    JUDGE VANASKIE
FEDERAL EXPRESS CORPORATION,     :
                                 :
            Defendant            :

## ORDER

NOW, THIS 10th DAY OF DECEMBER, 2008, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT FedEx' Motion for Summary Judgment on Plaintiffs' Pennsylvania Minimum Wage Act Claim (Dkt. Entry 30) is GRANTED.


                          s/ Thomas I. Vanaskie
                          Thomas I. Vanaskie
                          United States District Judge