IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDAN MASTERSON, | : | 3:07-cv-2241 |
| JOHN MARTIN, and | : | |
| JOSEPH DEFAZIO, SR., | : | |
| on behalf of themselves and all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| FEDERAL EXPRESS CORPORATION, | : | |
| d/b/a FEDEX EXPRESS, | : | |
| DAVID J. BRONCZEK, | : | |
| RON J. CARLSON, | : | |
| FREDERICK W. SMITH, | : | |
| JOHN DOES (1-50), fictitiously named | : | |
| Individuals, and ABC COMPANIES (1-10), | : | |
| fictitiously named business entities, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM AND ORDER**

**August 12, 2010**

This matter is before the Court on Plaintiffs' Motion for Class Certification (Doc. 77), filed on January 15, 2010. Also pending before the Court is Defendant Federal Express Corporation's Motion to Deny Class Certification on Grounds of Issue Preclusion (Doc. 89) filed on February 16, 2010. Both Motions have been

1

fully briefed by the parties and are therefore ripe for our review.[1] For the following reasons, both Motions shall be denied.

## I.  BACKGROUND

### A.  Factual Background

Plaintiffs Brendan Masterson, John Martin, and Joseph DeFazio, Sr. bring this action on behalf of three putative classes of all Pennsylvania-based couriers employed by Defendant Federal Express Corporation ("FedEx").  Plaintiffs define the classes as follows:

(1) All couriers employed by FedEx in Pennsylvania from October 15, 2002 to March 31, 2006 for breach of express and implied contract claims for unpaid preliminary work;

(2) All couriers employed by FedEx in Pennsylvania from December 10, 2004 to March 31, 2006 for claims for violations of Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* for unpaid preliminary work;

(3) All couriers employed by FedEx in Pennsylvania from October 15, 2002 to March 31, 2006 for unjust enrichment/quantum meruit claims

---

[1] On June 1, 2010, this matter was reassigned by The Honorable Thomas I. Vanaskie to the undersigned.

for unpaid preliminary work.

Plaintiffs allege that FedEx violated Pennsylvania statutory and common law by requiring couriers to perform unpaid preliminary work between their arrival at the station and their scheduled start time.

FedEx couriers are paid an hourly wage. It is undisputed that FedEx couriers are required to keep two sets of daily time records. First, FedEx couriers must manually punch a timecard upon their arrival and departure to and from the station. Second, couriers utilize "Trackers," which are electronic notepads upon which couriers report their work activities for the day. It is also undisputed that FedEx pays wages based solely on the couriers' Tracker entries.

According to Plaintiffs, prior to April 1, 2006,[2] FedEx systematically encouraged and/or required couriers to perform preliminary work during the gap time between when the couriers arrived at the station and when they logged the first entry on their Trackers at their scheduled start time. Preliminary work included gathering personal supplies such as clipboard and backbelt, inspecting uniforms and personal appearance, picking up the daily manifest, picking up work

---

[2] Plaintiffs contend that FedEx changed its timekeeping policy on April 1, 2006, following a settlement with California-based couriers. The new policy permits couriers to punch-in no earlier than five minutes prior to their scheduled start-time. Couriers are compensated for this five minutes of "prep time."

supplies such as the Tracker, and recording additional information on timecards. Because FedEx based couriers' pay on the Tracker time entries and not the manual timecards, Plaintiffs contend that FedEx required them to perform unpaid work.

### B. Class Certification Cross-Motions

Plaintiffs and FedEx cross-move for an against class certification. Plaintiffs contend that they satisfy the standards of numerosity, commonality, typicality and adequacy required by Fed. R. Civ. P. 23(a), and that common questions of law and fact predominate over individual considerations, thus making class consideration of the claims a superior method of adjudication for purposes of Fed. R. Civ. P. 23(b)(3). Regarding common questions of law and fact, Plaintiffs contend that they can prove FedEx breached the WPCL and contractual requirements to pay couriers for all hours worked because FedEx training materials instructed couriers to perform various types of preliminary work during the gap time between manual timecard punch on arrival and first tracker entry.

Plaintiffs further submit that 49 C.F.R. § 395.2, a regulation promulgated by the Federal Motor Carrier Safety Administration of the Department of Transportation (hereinafter "DOT regulation"), provides a common legal standard for their WPCL and contractual claims, which allege that couriers were not paid for all "hours worked." The DOT regulation defines "on-duty time" as "[a]ll time

4

from the time a driver . . . is required to be in readiness to work until the driver is relieved from work," which includes "[a]ll time at a plant, terminal, facility or other property of a motor carrier or shipper, or on any public property, waiting to be dispatched." Plaintiffs argue that they were "on duty" but unpaid during the gap time between when couriers manually clocked-in on arrival and when they submitted their first Tracker entry at their start time. Plaintiffs submit that the Court may compare the actual clock-in times of FedEx couriers with their scheduled start times to determine the amount of off-the-clock work performed.

FedEx cross-moves to deny class certification on the grounds of issue preclusion, arguing that courts in the Eleventh Circuit have already denied certification of nationwide and statewide classes of hourly FedEx employees alleging substantially the same injuries – that FedEx required them to perform unpaid work during the gap time between clocking in and registering their start time on their Trackers. *See Clausnitzer v. Federal Express Corporation,* 248 F.R.D. 647, 2008 U.S. Dist. LEXIS 25005 (S.D. Fla. Feb. 28, 2008)(denying certification of nationwide class alleging contract and quantum meruit claims); *Babineau v. Federal Express Corporation*, 576 F.3d 1183 (11th Cir. 2009)(affirming district court's denial of statewide class alleging contract and quantum meruit claims). Alternatively, FedEx opposes Plaintiffs' Fed. R. Civ. P.

23(b)(3) predominance contentions, arguing that the DOT regulation has no bearing on Plaintiffs' WPCL or contract claims, and thus, the Court would have to entertain individualized inquiries for each courier to determine whether they were required to perform unpaid work.  Specifically, Defendants cite the deposition testimony of the Plaintiffs that indicates Plaintiffs were never instructed to arrive before their scheduled start times or to perform off-the-clock work.

Thus, FedEx contends that a determination of whether a FedEx courier was required to perform unpaid work, and how much unpaid work an individual courier performed, depends on individual circumstances and requires an individualized inquiry.  FedEx submits that the need for these individualized inquiries has led the courts in *Clausnitzer* and *Babineau,* in the context of FedEx hourly employees alleging the same injuries as the present Plaintiffs, to determine that a class action would be impracticable for determining wages owed for unpaid work.  See *Clausnitzer*, *supra* at 661-662 and *Babineau*, *supra* at 1193-1195.

## II. CLASS CERTIFICATION

### A. Class Certification Standard Under Rule 23

A federal court may only certify a class for litigation if it determines, after a "rigorous analysis," that the party seeking class certification has met all of the prerequisites of Rule 23.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305,

309 (3d Cir. 2008)(citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Beck v. Maximus*, 457 F. 3d 291, 297 (3d Cir. 2006)). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *Hydrogen Peroxide*, 552 F. 3d at 320. Thus, the "requirements set out in Rule 23 are not mere pleading rules," and the class certification inquiry "requires a thorough examination of the factual and legal allegations." *Id*. at 316; *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F. 3d 154, 166 (3d Cir. 2001). "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Hydrogen Peroxide*, 552 F.3d at 316.

Plaintiffs submit that we should employ a more lenient standard for class certification that both presumes the Complaint's substantive allegations to be true and favors class certification in doubtful cases. Plaintiffs cite the Supreme Court decision of *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974), where the Court observed that Rule 23 does not "authorize a court to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action," for the principle that the court should not explore the merits of a

claim during the class certification inquiry. Plaintiffs rely on the Third Circuit's decisions in *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) and *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir. 1970) for the proposition that doubtful cases are resolved in favor of class certification. However, we agree with FedEx that Plaintiffs' lenient standard misstates the current prevailing law of the Third Circuit regarding class certification. Indeed, the Third Circuit rejected the Plaintiffs' version of the standard in *Hydrogen Peroxide*.

In *Hydrogen Peroxide*, the Third Circuit explained that the *Eisen* Court's suggestion that Rule 23 does not authorize a preliminary merits inquiry was at odds with prior and subsequent Supreme Court decisions that recognized that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the Plaintiff's cause of action." *Hydrogen Peroxide*, *supra* at 317 (quoting *Coopers v. Lybrand and Livesay,* 437 U.S. 463, 476 (1978)(internal quotation marks omitted)). In *Newton*, the Third Circuit explained that the circumstances underlying *Eisen* support a narrow reading of its holding, because the preliminary merits inquiry there involved a district court's decision, based on its determination that the plaintiff was likely to succeed on the merits of his claim, to shift the cost of notifying class members to the defendant. *Newton*, 259 F. 3d at 166. Accordingly, our Circuit has determined that "*Eisen* is

best to preclude only a merits inquiry that is not necessary to determine a Rule 23 requirement." *Hydrogen Peroxide*, *supra* at 317 (citing *Newton*, 259 F. 3d at 166-167).

*Hydrogen Peroxide* also explained that the *Eisen* and *Kahan* decisions came before the 2003 amendments to Rule 23 that "reject[ed] tentative decisions on certification and encourage[d] development of a record sufficient for informed analysis." *Hydrogen Peroxide, supra* at 321 (citing Fed. R. Civ. P. 23 advisory committee's notes). Accordingly, the Third Circuit has held that courts "should not suppress 'doubt' as to whether a Rule 23 requirement is met – no matter the area of substantive law." *Id.*; *see also In re Schering Plough ERISA Litig.*, 589 F. 3d 585, 600 n. 14 (3d Cir. 2009). Consequently, this Court must apply the "rigorous analysis" standard set forth in *Hydrogen Peroxide* to the case *sub judice*.

To obtain class certification under Rule 23, Plaintiffs must satisfy both the conjunctive requirements of subpart (a) and one of the requirements of subpart (b). Fed. R. Civ. P. 23; *Schering-Plough*, 589 F. 3d at 596. The touchstones of subpart (a) are: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect

9

the interests of the class')." *Amchem Prods.,* 521 U.S. at 613.

With respect to subpart (b), Plaintiffs seek certification under Rule 23(b)(3), thus they must demonstrate predominance of common questions of law and fact and the superiority of class litigation to other forms of litigation.[3] The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is a "far more demanding" requirement than the commonality requirement of Rule 23(a). *Hydrogen Peroxide*, 552 F. 3d at 311 (quoting *Amchem*, 521 U.S. at 623-624). Rule 23 sets forth four factors to aid in the determination of whether class action is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

In the instant case, FedEx challenges Plaintiffs' assertion that they share

---

[3] Rule 23(b)(3) permits class certification where the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

common issues of law and fact with putative class members, and thus challenges whether Plaintiffs meet the requirements of class certification pursuant to Rule 23(b)(3). FedEx does not challenge the requirements of numerosity, typicality, and adequacy, thus our analysis will focus on the commonality, predominance and superiority issues.

### B. Common Questions of Law and Fact

At the outset of our analysis, we must address the FedEx's argument that Plaintiffs are precluded from class certification here based on the adverse class certification decisions in *Clausnitzer* and *Babineau*. In those cases, the courts denied class certification of nationwide and statewide classes of hourly FedEx employees alleging the same injuries as Plaintiffs in this case – that FedEx required its employees to perform unpaid work during the gap time between clocking in and registering their start time on their Trackers. *Clausnitzer*, 248 F.R.D. at 658-63 (denying certification of nationwide class raising contract and quantum meruit claims); *Babineau*, 576 F.3d at 1191-95 (affirming district court's denial of certification for statewide class bringing contract and quantum meruit claims).

The doctrine of issue preclusion, also known as collateral estoppel, "prevents parties from relitigating an issue that has already been actually

11

litigated." *Pelero v. United States*, 488 f. 3d 163, 174 (3d Cir. 2007). Collateral estopppel applies where "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Id*. at 175 (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995); *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).

Despite the initial appeal of FedEx's argument, the Third Circuit has held that "denial of class certification . . . lacks sufficient finality to be entitled to preclusive effect." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.* ("*GM II*"), 134 F. 3d 133, 146 (3d Cir. 1998).[4] Therefore, while existence of *Clausnitzer* and *Babineau* do not preclude the Plaintiffs' from achieving class certification, we are entitled to recognize the cases as persuasive authority. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F. 3d, 763, 769 (7th

---

[4] *GM II* arose from truck owners' emergency applications under the Anti-Injunction Act to enjoin a Louisiana court from approving a settlement between a certified settlement class of truck owners and General Motors. The appellant truck owners in *GM II* argued that the Third Circuit's prior decision in *GM I*, 55 F.3d 768 (3d Cir. 1995) precluded the Louisiana court from certifying a similar class and approving a proposed settlement, because *GM I* vacated a district court's certification of a similar nationwide class and approval of settlement. *GM II*, 134 F. 3d at 136-37. The *GM II* court denied injunctive relief under the Anti-Injunction Act in part because it determined that the class certification denial in *GM I* lacked sufficient finality to be given preclusive effect. *Id*. at 146.

Cir. 2003) (explaining that, for non-class matters not eligible for issue preclusion, "precedent rather than preclusion is the way one case influences another").

Both *Clausnitzer* and *Babineau* are clearly highly relevant cases because they address class certification issues relative to hourly FedEx employees, a putative class that includes couriers, alleging the same injuries as averred by the instant Plaintiffs – that FedEx required them to perform unpaid work during the gap time between arrival and their scheduled start. *Clausnitzer*, 248 F.R.D. at 648-49 & n. 1; *Babineau*, 576 F.3d at 1185-86. Both courts recognized the testimony of employees regarding non-work activities that occurred during unpaid gap periods demonstrated the necessity of conducting individualized inquiries whether a particular employee actually performed unpaid work. *Clausnitzer*, 248 F. R. D. at 661-662; *Babineau*, 576 F.3d at 1192-94. As the *Clausnitzer* court noted, "[p]ermitting these claims to proceed as a class action would deprive FedEx of the ability to explore whether an individual employee was engaged in non-work activities during the gap period," thereby "limit[ing] FedEx's ability to properly defend the claims." 248 F.R.D. at 662.

As noted, we do not consider this Court to be bound by the *Clausnitzer* and *Babineau* decisions. However, given the fact-specific context of a class certification inquiry, the similarities between the putative class, the legal claims,

13

and record evidence regarding workers' varying activities during the unpaid gap periods (i.e. engaging in non-work activities), make these decisions quite persuasive to us. As in *Clausnitzer* and *Babineau,* the Plaintiffs here give differing accounts of what occurred during the gap periods. For example, Plaintiff DeFazio testified that he was never told to perform work off-the-clock but that he was required to collect supplies off-the-clock before his scheduled start time. (DeFazio 53:17-20; 79:9-19). Both Masterson and Martin testified that they were never instructed to arrive at the station before their scheduled start times (Masterson 43:1-13; Martin 47:21-24). As this evidence demonstrates, as it did in *Clausnitzer* and *Babineau*, that we would have to undertake individualized factual inquiries regarding whether a particular employee was required to perform unpaid work, whether he or she actually did perform unpaid work, and how much work was performed to resolve class members claims. *See Babineau*, 576 F. 3d at 1193 ("Even if FedEx policies pressured some employees to arrive early or stay late, it is clear from the record that other employees did so voluntarily and for purely personal reasons."). Despite Plaintiffs' assertions to the contrary, without more, the couriers' timecards cannot answer these questions. *See id*. at 1192 (finding that "the district court reasonably concluded that punch clock records do not provide common proof of any uncompensated work").

Plaintiffs attempts to distinguish *Clausnitzer* and *Babineau* are ultimately unavailing. First, Plaintiffs argue that the putative classes in those cases were broader than the proposed class here, which only includes Pennsylvania couriers. As a corollary to this argument, Plaintiffs argue that the *Clausnitzer/Babineau* plaintiffs raised broader and/or different claims than the Pennsylvania-law based claims in this case and that Plaintiffs here have a different factual basis for their contractual relationships with FedEx. With regard to this argument, while it is true that Plaintiffs in this case have presented a narrower class based on somewhat different claims, the fundamental issue – namely the deficiency of common issues – remains the same. It makes no difference for purposes of our determination whether the class is narrower or whether the alleged duty arose from a state wage regulation or a contract, because individualized proof would still be required to prove that FedEx actually breached a duty. Additionally, the unjust enrichment claim essentially *demands* an individualized inquiry, because it requires a showing that the plaintiff performed services in good faith, that the defendant accepted those services, and that the plaintiff had a reasonable expectation of compensation. *Babineau*, 576 F. 3d at 1194-95 (finding individualized inquiry necessary to resolve plaintiffs' Florida-law quantum meruit claims).

Next, Plaintiffs argue that they have presented common proof not present in

*Clausnitzer* and *Babineau*: the DOT regulation and employee training materials, which permit us to calculate unpaid work by comparing couriers' timecard clock-ins with scheduled start times. However, Plaintiffs attempt to use the DOT regulation in a way far removed from its purpose. The DOT regulation is a highway safety regulation that limits the amount of hours commercial drivers can work during a given period of time. We have no reason to believe, nor have the Plaintiffs provided us with one, that this regulation has any bearing on Pennsylvania wage and hour laws. In fact, the Department of Transportation has issued regulatory guidance explaining that the Federal Motor Carrier Safety Regulations, such as this DOT regulation, "do not address questions of pay." 49 C.F.R. Chapter III, Regulatory Guidance for the Federal Motor Carrier Safety Regulations, 62 Fed. Reg. 16370-01, 16442 (Apr. 4, 1997). There is simply no authority for Plaintiffs' bald assertion that the DOT regulation's definition of "on-duty time" can be used to determine issues arising under Pennsylvania's wage laws.

The deposition testimony of the three named Plaintiffs in this case have already demonstrated that the resolution of putative class's unpaid gap-time work claims will require individualized inquiries regarding the extent to which specific FedEx couriers were required to work, and did work, during gap periods. Thus,

we find that individual issues of fact predominate over any common issues, and therefore, class litigation is not superior to other methods of adjudication. It is simply not practicable for us to undertake the individualized inquiry necessary for the potential claims of thousands of Pennsylvania-based FedEx couriers in this proposed class. *See* Fed. R. Civ. P. 23(b)(3)(D) (instructing courts to consider "the likely difficulties in managing a class action"); *see also Clausnitzer*, 248 F.R.D. at 662 ("Engaging in [individualized] inquiries will cause the adjudication of the over 100,000 potential employees' claims to become unmanageable, burdensome, and would unreasonably tax judicial resources."); *Merlo v. Federal Express Corporation*, 2010 U.S. Dist. LEXIS 56101 (D.N.J. June 7, 2010) (denying class certification of putative class of 8,000 New Jersey-based FedEx couriers for unpaid gap-time work claims because common issues of fact did not predominate and class treatment not superior form of adjudication).

Based on all of the foregoing, we find that Plaintiffs' putative class does not withstand a rigorous Rule 23 review. Accordingly, we shall deny Plaintiffs' Motion for Class Certification.

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Class Certification (Doc. 77) is **DENIED**.

2. Defendants' Motion for Denial of Class Certification on Issue

Preclusion Grounds (Doc. 88) is **DENIED**.


s/ John E. Jones III
John E. Jones III
United States District Judge